UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WESTERN RESERVE CARE SYSTEM,** | ) ) ) | CASE NO. 4:07CV1979 |
| Plaintiff, | ) ) | JUDGE PETER C. ECONOMUS |
| v. | ) ) | |
| **MICHAEL O. LEAVITT,** Secretary of the Dept. of Health And Human Services, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

This matter is before the court upon Motions for Summary Judgment filed by each party. (Dkt. #18, 24). A Response in Opposition and a Reply has been filed with respect to each Motion. (Dkt. # 24, 27, 29).

## I. BACKGROUND

Plaintiff filed the Complaint in the instant matter on July 2, 2007, seeking judicial review of the decision of the Administrator of the Centers for Medicare and Medicaid Services denying Plaintiff's request for reimbursement of certain costs associated with medical care.

1

A. **The Medicare System**

*1. Wage Index Overview*

Medicare is a federal program that was created in 1965 under Title XVII of the Social Security Act, 42 U.S.C. § 1395 et. Seq. Providers of health care (i.e. hospitals) enter into agreements with the Secretary of Health and Human Services (the "Secretary"), through which they receive reimbursement for costs associated with treating Medicare beneficiaries. Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 404 (1993).

The Secretary administers Medicare payments through the Centers for Medicare and Medicaid Services ("CMS"). Medicare reimburses the "reasonable cost" for treating Medicare beneficiaries, defined under 42 U.S.C. § 1395x(v)(1)(A) as "the cost actually incurred, excluding… any part of incurred cost found to be unnecessary in the efficient delivery of health services." 42 U.S.C. § 1395x(v)(1)(A). This payment regime gave rise to "routine cost limits" imposed by the Secretary based upon factors such as the type of provider, services rendered, geographic location and patient composition. 20 C.F.R. § 405.60 (1975).

In 1983, Congress created the inpatient Prospective Payment System ("PPS"). Under the PPS, "hospital operating costs are reimbursed on a per discharge basis," thus encouraging shorter patient stays and more efficient delivery of patient care. Battle Creek Health System v. Leavitt, 498 F.3d 401, 403 (6th Cir. 2007). Western Reserve Care System ("WRCS"), a short-term acute care hospital, is reimbursed under PPS and receives a fixed amount for each discharged patient based upon the "diagnostic related

2

group" ("DRG") of each patient.  42 U.S.C. § 1395ww(d).  "[T]he base DRG payment rate is divided into two portions: the labor-related costs, which [are] adjusted for… geographic differences, and the non-labor related costs, which [are] not."  Bellevue Hosp. Center v. Leavitt, 443 F.3d 163, 168 (2d. Cir. 2006).

The "wage index" is a mechanism designed to "adjust reimbursement rates to reflect regional variations in hospital wage costs."  Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1227-1228 (D.C. Cir. 1994).  The Secretary determines each provider's wage index by taking the average cost of inpatient services nationwide ("federal rate"), and comparing each particular provider's inpatient services costs against it.  Id. at 1227-1228; *See* 42 U.S.C. §1395ww(d)(2).

Medicare requires that providers participating in PPS "meet the recordkeeping and cost reporting requirements of 42 C.F.R. §§ 413.20 and 413.24."  42 C.F.R. § 412.52.  As such, each provider must "maintain sufficient financial records and statistical data for proper determination of costs payable under the [Medicare] program."  Id. at § 413.20. Furthermore, the data must be "accurate, and in sufficient detail to accomplish the purposes for which it is intended."  Id. at § 413.24(c); Mercy Home Health v. Leavitt, 436 F.3d 370, 372 (3d Cir. 2006).

The Provider's Reimbursement Manual ("PRM") provides the following instructions for providers when entering the amount paid for services under contract:

> Enter the amount for services furnished under contract, rather than by employees, for direct patient care, and management services as defined below.  DO NOT include cost for equipment, supplies, travel expenses and

3

> other miscellaneous or overhead items…Report only personnel costs associated with these contracts.

PRM 15-2 § 3605.2. Likewise, with respect to pharmacy services, the PRM requires, in relevant part, that the provider "enter the amount paid for pharmacy services furnished under contract, rather than by employees. DO NOT include the following services paid under part B…management and consultant contracts…or any other service not directly related to patient care." Id. at Line 9.01. The Secretary may deny reimbursement when a provider submits inadequate or inaccurate records. Daviess County Hosp. v. Bowen, 811 F.2d 338, 346-347 (7th Cir. 1987).

### 2. The Administrative Framework

To receive reimbursement from Medicare, providers submit cost reports to intermediaries (typically private companies that contract with CMS to handle Medicare reimbursement). The provider has the burden of providing sufficient records and data to determine costs payable under Medicare. 42 C.F.R. §§ 413.20(a), 412.52, Mercy Home Health v. Leavitt, 436 F.3d 370, 380 (3d Cir. 2006). If a provider is not satisfied with the intermediary's determination of eligibility, the provider is entitled to a hearing before the Provider Reimbursement Review Board ("PRRB") so long as certain statute of limitations and amount in controversy requirements are met. 42 U.S.C. § 1395oo(a); Medical Rehabilitation Services, P.C. v. Shalala, 17 F.3d 828, 830-31 (6th Cir. 1994). If dissatisfied with the PRRB's decision, the provider may seek discretionary review before the Administrator of CMS ("the Administrator"), the Secretary's delegate. 42 U.S.C. §

1395oo(f); 42 U.S.C. § 405.1875. If dissatisfied with the Secretary's final decision as issued by the Administrator, the provider may then seek judicial review. 42 U.S.C. § 1395oo(f).

### B. Facts

Plaintiff WRCS is a non-profit corporation that operates a general acute care hospital located in Youngstown, Ohio, and thus is subject to PPS. In the fiscal year ("FY") 1999, WRCS entered into two contracts relevant to the instant matter: one for perfusionist services and one for pharmacy services. WRCS submitted the costs of these contracts in its FY 1999 report. AdminaStar Federal Inc., the intermediary, made no adjustments to the costs of the contractual services during its audit of the cost report, but excluded the costs for the purposes of calculating WRCS's FY 2003 wage index. WRCS brings the instant action seeking a reversal of the April 24, 2007, decision of the Administrator excluding the costs both contracts from the wage index calculation under PRM 15-2 § 3605.

#### 1. Perfusionist Services

In FY 1999, Plaintiff entered into an agreement, entitled "Open Heart Surgery Program Supportive Services Agreement," with Allegheny General Hospital ("Allegheny") to provide perfusionist services for the period from June 1, 1997, through March 26, 2002 ("Perfusionist Agreement"). A perfusionist operates a machine to ensure that the patient breathes and maintains blood flow while the heart is stopped for surgical intervention.

5

As per the Perfusionist Agreement, Allegheny was required to provide the "services of qualified cardiovascular Perfusionists to [operate] bypass equipment for open heart surgery" for a flat "fee per case" dependent on WRCS's need. (Dkt. #20, Exhibit A at R.154). However, Appendix B to the Perfusionist Agreement itemized the compensation regime for the perfusionists' services. (Id. at R.163). The perfusionists were reimbursed for (1) continuing legal education and re-certification expenses ($1500 per perfusionist per year), (2) travel expenses ($0.31 per mile) and (3) communication expenses ($250 per perfusionist per year). Appendix B also set forth the flat rate for "perfusionist compensation." (Id. at R. 164).

On August 1, 2002, CMS finalized the FY 2003 wage index update using the FY 1999 wage data. CMS rejected WRCS's inclusion of the cost of the Perfusionist Agreement in the wage index calculation because, though the Perfusionist Agreement provided for a "fee-per-case" flat rate, the contract included indirect costs that are not allowable under PRM 15-2 §3605, which precludes reimbursement for travel expenses and other miscellaneous items. CMS excluded all of the contract labor costs and hours from the wage index calculation for FY 1999.

WRCS filed an appeal on January 28, 2003, with the PRRB pursuant to 42 C.F.R. §§405.1835-1841. The Board reviewed the calculation of the wage index by CMS with respect to the Perfusionist Agreement and concluded that under PRM 15-2 §33605.2, CMS requires that WRCS only report personnel costs associated with direct patient care services performed under contract. The Board found that under the compensation regime

6

of Appendix B, the "flat-fee" included labor costs that were incurred for the expressed purpose of putting perfusionists in a position to provide patient services and were "wage related" for wage index purposes.  The Board also determined that PRM 15-2 § 3605.2 does not require any "further breakdown of the costs incurred by Allegheny to provide the perfusionist services.  Thus any additional breakdown in Appendix B is beyond the scope of Medicare requirements."  (Dkt. #1, Exhibit A at 6).  The PRRB therefore reversed the decision of CMS with respect to WRCS's inclusion of the costs of the Perfusionist Agreement in the wage index calculation.

WRCS appealed the Board's decision to the Administrator, who decided the matter on February 23, 2007.[1]  The Administrator relied on PRM 15-2 §3605.2 line 9, which requires that hospitals "report only personnel costs associated with the contract" and must "eliminate all supplies, travel expenses and other miscellaneous or overhead items" as well as "breakdown the contract cost to ensure the exclusion of any indirect cost."  PRM 15-2 §3605.2.  The Administrator concluded that WRCS had failed to properly eliminate the travel expenses and miscellaneous items from the reported cost of the Perfusionist Agreement, or to provide sufficient documentation to allow the intermediary to exclude such indirect costs from the hospital's wage index.  Thus, the Administrator found that the intermediary properly excluded the total cost of the

---

[1] WRCS appealed the Board's ruling with respect to the Pharmacy Agreement, thus requiring the Administrator to evaluate the Board's entire decision. As such, the Administrator also reviewed the Perfusionist Agreement and subsequently excluded it from the wage index. (Dkt # 2, Exhibit B at 2, 12).

7

Perfusionist Agreement when calculating the wage index for FY 2003. (Dkt. #1, Ex. B at 11).

For reasons not enumerated in the Complaint, the Perfusion Services Agreement was terminated effective April 20, 1999. Up to that time, WRCS made three payments on the contract to Allegheny in FY 1999, totaling $249,915.17.

### *2. Pharmacy Services*

WRCS entered into a contract with Owen Healthcare, Inc. ("Owen") for pharmacy services for the period from October 1, 1996, through September 30, 2001 ("Pharmacy Agreement"). Under the terms of the contract, WRCS provided registered pharmacists and support personnel, and Owen provided pharmacy inventory and management personnel. Section 2 of the Pharmacy Agreement enumerated some of the services that Owen was contractually bound to provide. Of particular relevance, Section 2.2 tasked Owen with providing the "hospital… with patient care-oriented pharmacy services," and Section 2.5 stipulated that Owen's pharmacists would "[r]eview patient [drug] therapy for incompatibilities and interactions." (Dkt. #20, Exhibit B at R.286).

For the services Owen provided, WRCS paid a flat rate of $55.52 per adjusted patient day. In FY 1999, WRCS had a total of 112,948 adjusted patient days, meaning that WRCS paid Owen $6,270,873 for the year. Owen and WRCS attributed $1.55 per patient day to the pharmacists' salaries and $0.39 per patient day to their benefits. Thus, WRCS submitted the amount of $219,072 to the intermediary as the relevant labor wage for Owen's pharmacy services in FY 1999. (Dkt. # 20, Ex. B).

8

The intermediary considered the Pharmacy Agreement a contract for management services and excluded the claimed labor costs (in the amount of $219,072) from the wage index calculation. WRCS appealed the intermediary's decision to the PRRB on January 28, 2003. (Dkt. #1, Exhibit A at 5). The PRRB agreed with the intermediary's finding that the Pharmacy Agreement was a "management contract," reasoning that the language of the contract indicated that the services provided by Owen were supervisory in nature and focused on strategic planning and staff development. (Id. at 7). Furthermore, the PRRB found that nothing in the language of the contract required Owen to provide services directly to patients. Rather, the language of the contract limited Owen's functions to management, oversight, and consulting. (Id. at 6).

WRCS appealed the Board's decision to the Administrator, who decided the issue on February 23, 2007. The Administrator upheld the Board's decision, concluding that the language of the contract indicated that WRCS delegated the authority to manage and supervise the operation of the pharmacy to Owen, but that WRCS would provide the full-time registered pharmacists and other personnel. Thus, the administrator determined that Owen provided a management service that was not directly related to patient care. The Administrator cited PRM 15-2 § 3605.2, which explicitly excludes payments for management, consulting payments, and other payments not directly related to patient care from the wage index. (Dkt. #1, Exhibit B at 3).

9

## C. *Standard of Review*

Judicial review of the Administrator's decision regarding Medicare reimbursement is governed by the Administrative Procedures Act ("APA"), 5 U.S.C. §701-706. *See* 42 U.S.C. § 1395oo(f)(1); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). As such, the agency's interpretation of its own regulation is generally entitled to deference and the scope of judicial review is "narrow." Battle Creek, 498 F.3d at 408. Under the APA, this Court reviews an agency decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).

The APA requires that an agency's interpretation of a regulation be given controlling weight unless it is "plainly erroneous or inconsistent with the regulation." Id. Thus, federal courts have held that the Secretary's determination should be reversed when it "results in a severe distortion of the wage index despite the feasibility, plausibility, and workability of preventing that distortion." Centra Health, Inc. v. Shalala, 102 F.Supp. 2d 654, 660 (W.D. Va. 2000). Therefore, if the Secretary were to exclude properly includable wage-related costs in an index calculation, the Court would have the authority to reverse the decision provided that the Secretary's actions were "arbitrary, capricious or constituted an abuse of discretion." Sarasota Memorial Hospital v. Shalala, 60 F.3d 1507, 1513 (11th Cir. 1995).

10

## II. LAW AND ANALYSIS

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

11

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)). The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Clayton v. Meijer, Inc., 281 F.3d 605, 609 (6th Cir. 2002) (quoting Celotex, 477 U.S. at 324-25). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### A. The Perfusionist Agreement

#### 1. *WRCS's Payments to Allegheny Improperly Included Non-Wage-Related Personnel Costs*

Section 3.1 of the Perfusionist Agreement defines the scope of the perfusionist services to be provided. The parties do not dispute that Section 3.1 contracts patient care (perfusionist) services to Allegheny. However, pursuant to 42 U.S.C. § 1495ww(d)(3)(E), WRCS may only report wage-related costs for direct patient care on Worksheet S-3 Part II. PRM 15-2 § 3605.2, in relevant part, instructs hospitals to "[e]nter the amount paid for services furnished under contract, rather than by employees, for direct patient care, and management services as defined below," and to "report only personnel costs associated with these contracts…eliminat[ing] all supplies, *travel expenses* and other miscellaneous items." (Emphasis Added).

Appendix B of the Perfusionist Agreement includes the perfusionists' compensation arrangement and "flat fee schedule" of the Perfusionis Agreement. (Dkt.

12

#1, Exhibit A at R. 164).  The Administrator, in his report, concluded that Appendix B's itemization of the perfusionists' compensation clearly contained travel expenses and other miscellaneous items that WRCS should have excluded in order to comply with the requirements of the PRM line 9 instructions.  (Id. at R.163).  The Court finds that this conclusion was logical and not arbitrary, capricious, or an abuse of discretion.

WRCS first argues that although Appendix B sets out the "amounts for each item of compensation," the inclusion of continuing education, travel and cell phone expenses did not actually alter the amount WRCS paid for the perfusionist services.  As evidence of this, WRCS points to the fact that as per the fee schedule, they paid the same amount per case regardless of how far a perfusionist traveled, how many minutes they used on their cellular phones, or how many hours the perfusionists worked per week.  (Dkt. # 20 at 15).  This argument is unconvincing.  It was entirely reasonable for the Administrator to conclude that because the contract clearly enumerates ineligible expenses, the parties incorporated such costs into the contract.

Next, WRCS contends that Appendix B is an "Internal Fee Allocation" by Allegheny.  While PRM 15-2 § 3605.2 does, in fact, clearly state that a hospital is to "[e]nter the amount paid for services furnished under contract," the same section also requires that the contract costs must not include the "cost [of] equipment, supplies, travel expenses, and other miscellaneous or overhead items."  The provider, WRCS, has the responsibility of excluding ineligible costs in order to comply with the PRM 15-2 § 3605.2 requirements.  There is no evidence to suggest that the Administrator abused his

discretion by denying reimbursement for the cost of the Perfusionist Agreement because it contained ineligible costs under PRM 15-2 § 3605.2.

WRCS also argues that the Administrator adopted a too "cramped" view of "personnel costs associated with [the] contract" when he determined that cell phone costs and travel expenses were "disallowed" under PRM 15-2 § 3605.2. In support of this proposition, WRCS cited Sarasota Memorial Hospital v. Shalala, 60 F.3d 1507, 1514 (5th Cir. 1995). In Sarasota, the Court held that a provider could classify FICA payments as wage-related because FICA payments were (1) required by state law, (2) classified as wages when deducted from employees' gross pay but "miscellaneous fringe benefits" when paid directly by the employer, and most importantly (3) the Administrator accepted FICA payments as "wage related" and calculated them into the wage index in other metropolitan statistical areas ("MSAs"). Id. at 1513. In the instant case, there is no evidence that the Administrator treats cell phone bills and traveling expenses as labor costs for other MSAs, nor that such costs were required by law to be paid. Thus, Platintiff's reliance on Sarasota is misplaced.

### 2. WRCS Did Not Provide the Intermediary or CMS With Sufficient Data to Accurately Determine the Wage Index.

WRCS argues that the Administrator erred in determining that breaking down of the Perfusionist Agreement into eligible and ineligible parts was supported by law. However, both the Administrator and WRCS agree that an actual breakdown of the costs is simply not feasible at this time. (Dkt. # 20 at 18). In his decision, the Administrator

14

noted that it was WRCS's "responsibility to maintain and furnish the intermediary sufficient documentation for a proper determination of costs payable under the program pursuant to 42 C.F.R. § 413.20 and § 413.24." (Dkt. # 1, Exhibit A at 11). Furthermore, without the proper information to fulfill the requirements of PRM 15-2 § 3605.2, and without proper documentation to separate personnel costs from indirect costs, the intermediary could not properly eliminate the costs that overstated the wage index. The Administrator also noted that because the wage index is calculated via a "budget neutral" formula, the effect of an improper wage index calculation would not only artificially inflate compensation in WRCS's market, but it would also decrease payments to all other hospitals in the country. (Dkt. # 1, Exhibit A at 11).

Plaintiff's assertion that the cost of the Perfusionist Agreement, not broken down, should be included in the wage index is without merit. PRM 15-2 § 3605.2 clearly mandates that WRCS only report "personnel costs" associated with contracts. Furthermore, the Seventh Circuit has held that the "reasonable cost provision" of 42 U.S.C. § 1395x(v)(1)(A) allows the Administrator to completely deny reimbursement if the provider has submitted inadequate documentation. Daviess v. Bowen, 811 F.2d 338, 345-346 (7th Cir. 1987). In addition, the Sixth Circuit has taken a deferential approach to the Administrator's determination of the adequacy of documentation submitted by providers. In Battle Creek Health System v. Leavitt, 498 F.3d 401, 410 (6th Cir. 2007),

15

the Court held "that the Medicare Act grants the Secretary[2] broad discretion to determine which 'reasonable costs' may be reimbursed to Medicare providers. . .and what information is required from providers as a condition of reimbursement."

The Administrator found that WRCS failed to eliminate all the travel expenses and other miscellaneous costs from the reported contract and, therefore, concluded that these costs were improperly included in the wage index calculation and could not be carved out. (Dkt. # 1, Exhibit A at 17). This finding was not arbitrary, capricious, an abuse of discretion, or contrary to relevant law.

### 3. The Administrator Did Not Err By Excluding All Costs Under The Perfusion Services Agreement.

WRCS argues that the Administrator's exclusion of all costs under the PRM represents a "clear injustice and an abrogation of [his] duty under federal law." (Dkt. # 20 at 20). The Administrator excluded the entire cost of the Perfusionist Agreement because he found that it was not feasible to carve out the ineligible expenses. The decision to exclude the entire contract cost is supported by Daviess, 811 F.2d at 345. As such, the Court finds that the Administrator's decision was not arbitrary, capricious, or an abuse of discretion.

Finally, WRCS argues that the Administrator erred by excluding the entire cost of the contract when only a "negligible sum" could be attributed to ineligible expenses. In support of this proposition, WRCS cites Centra Health, Inc. v. Shalala, 102 F. Supp. 2d

---

[2] The decision of the PRRB may be further reviewed by the Secretary's delegate, the Administrator of CMS. See 42 C.F.R. § 405.1875. The statute also permits the hospital to seek judicial review of the final decision of the PRRB in federal district court within 60 days of receipt of the Administrator's decision. 42 U.S.C. § 1395*oo*(f)(1).

654, 660 (W.D. Va. 2000).  In <u>Centra</u>, the Court found that CMS improperly included wages from a hospital serving mentally-disabled individuals.  However, the court ruled that it was feasible to carve out the ineligible expenses and determined that "a recalculation based on data already in possession of the Secretary [was] feasible." <u>Centra</u>, 102 F.Supp.2d at 659.

<u>Centra</u> is thus distinguishable from the instant case.  Even if the Administrator's decision, "as applied, results in a severe distortion of the wage index," this court is not in a position to carve out the ineligible expenses and determine the proper wage index cost. <u>Id</u>. at 660.  The parties agree that the separation of the reported costs into eligible and ineligible expenses is not feasible in the instant case.

WRCS argues that the *maximum* ineligible expenses that could have been included in the per-case charge of the perfusionist contract was $1500 (Continuing Education) and $250 (cellular phone expenses) per year per perfusionist.  Furthermore, they conclude that because the contract was terminated four months into FY 1999, the carve-out could not exceed $875.00 per perfusionist.  (Dkt. #20 at 22).  The court rejects this analysis.  First, WRCS fails to account for the included travel expenses, which are expressly prohibited from the wage index under PRM 15-2 § 3605.2.  Moreover, this assertion clearly defies WRCS's Director of Reimbursement's testimony that the ineligible expenses could not be carved out.  (Dkt. # 24 at 17).

17

For the foregoing reasons, the Court finds that the Administrator's decision to exclude the cost of the Perfusionist Agreement from the wage index calculation was not arbitrary, capricious, or an abuse of discretion.

### B. The Pharmacy Agreement

PRM § 3605.2 line 9 expressly prohibits any management and consulting contracts or any other payments not directly related to patient care from being included in the wage index calculation.[3]  Because he determined that the Pharmacy Agreement was a management contract, the Administrator excluded the reported pharmacy costs from the wage index.  Under the agreement, Owen was to "own the inventory and *manage* a pharmacy service on behalf of [the] hospital for the purpose of exclusively supplying hospital pharmacy items."  (Dkt. #1, Exhibit B at R. 285)(emphasis added).

The language of this contract heavily favors the implication that this was a management contract.  Of Owen's eight enumerated responsibilities, only two (2.2 and 2.5) could be deemed to involve any remote relation to patient care.  However, PRM 15-2 § 3605.2 mandates that the any costs must be "*directly* related to patient care," in order to be eligible for inclusion in the wage-index calculation.  WRCS has failed to present any evidence that the three contracted pharmacists actually engaged in any activity that was directly related to patient care.

WRCS argues that Section 2.8 of the contract "plainly requires Owen to provide direct patient care services."  (Dkt. #20 at 25).  However, a plain reading of Section 2.8 of

---

[3] Although PRM 15-2 3605.2, line 9 excludes management contract services, there are four exceptions, none of which apply in the instant case.

18

the contract clearly obligates Owen to "manage and supervise the operation of the Pharmacy," a management responsibility. (Id. at R. 287).

Furthermore, Section 5.2 of the Pharmacy Agreement obligated the hospital to provide 18.63 full-time equivalent registered pharmacists and 26.44 full-time equivalent other personnel to "effectively operate the pharmacy." (Dkt. #20, Exhibit B at R.289). The Secretary interpreted this clause to mean that WRCS would supply the pharmacists who provided the patient services and that Owen's functions were limited to management, oversight, and consulting. (Dkt. # 1, Exhibit A at 12). Given the overall tone of the Pharmacy Agreement and the parties' focus on management, oversight, strategic planning, and developing policy and procedures, the Secretary's decision to exclude the cost of the contract from the wage index calculation was not arbitrary, capricious, or an abuse of discretion.

Even if this Court were to determine that some of the expenses should have been reported for wage-index purposes, it would, again, have no way to separate out the eligible costs. WRCS appears to have assumed that because two of eight tasks in the Pharmacy Agreement were conceivably "related to patient care" they could attribute the entire pharmacist salary ($1.55/pt. day) and benefit cost ($0.39/pt. day) to the wage index. This analysis is flawed. WRCS failed to show how the pharmacists' entire wages could be validly applied to the wage index. At least six of the pharmacists' eight duties were unrelated to patient care. Thus, to apply the pharmacists' entire salaries and

19

benefits to the wage index calculation would result in an overstatement of the wage index.

WRCS contends that Owen's management and supervisory duties did not preclude them from performing direct patient care.  Furthermore, WRCS argues that the Secretary ignored clear evidence that "Owen employees were required to perform, assist in, supervise and conduct patient care services."  (Dkt. #20 at 26).  This argument misses the mark.  WRCS has the burden of proving that, (1) each reported cost was directly related to patient care, and (2) this was not a management contract.  There is no indication that the Secretary ignored any evidence that WRCS presented in determining that WRCS did not meet its burden of proof.  As such, the Court finds that the Administrator's decision to exclude all reported Pharmacy Agreement costs from the wage index was not arbitrary, capricious, or an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**.  (Dkt. # 18).  Defendant's Motion for Summary Judgment is **GRANTED**.  (Dkt. # 24).

**IT IS SO ORDERED.**

**/s/ Peter C. Economus – July 25, 2008**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**